Jarvis Brown #08200-028
_____
Name and Prisoner/Booking Number
USP Pollock
_____
Place of Confinement
P.O. Box 2099
_____
Mailing Address
Pollock, LA 71467
_____
City, State, Zip Code

**FILED**

FEB 1 0 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

Jarvis Brown
_____
(Full Name of Plaintiff)        Plaintiff,

v.

(1) Andre Matevousian
_____
(Full Name of Defendant)

(2) "and others"
_____

(3) _____

(4) _____

            Defendant(s).

☑ Check if there are additional Defendants and attach page 1-A listing them.

)
)
)
)
)
) CASE NO. _____
)          (To be supplied by the Clerk)
)
)
)
)
)
)
)
)

1: 20 CV  00204  SAB PC

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**
"JURY TRIAL DEMANDED"
☑ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    - ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    - ☑ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
    - ☐ Other: _____

2.  Institution/city where violation occurred: Atwater USP/Atwater, California

## B. DEFENDANTS

1. Name of first Defendant: _Andre Matevousian_. The first Defendant is employed as:
   _Warden_ at _Atwater USP_.
   (Position and Title)                              (Institution)

2. Name of second Defendant: _Kimberly Banks_. The second Defendant is employed as:
   _Psychology Technician_ at _Atwater USP_.
   (Position and Title)                              (Institution)

3. Name of third Defendant: _Belinda Auterson_. The third Defendant is employed as:
   _Associate Warden_ at _Atwater USP_.
   (Position and Title)                              (Institution)

4. Name of fourth Defendant: _Jason Hess_. The fourth Defendant is employed as:
   _Associate Warden_ at _Atwater USP_.
   (Position and Title)                              (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☐ Yes    ☑ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
      _____.

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
      _____.

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____.
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____
      _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: 5th Amendment, Right to Procedual Due Process

2. **Claim I.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

- [ ] Basic necessities
- [x] Disciplinary proceedings
- [ ] Excessive force by an officer
- [ ] Mail
- [ ] Property
- [ ] Threat to safety
- [ ] Access to the court
- [ ] Exercise of religion
- [ ] Other: _____
- [ ] Medical care
- [ ] Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

"A district attorney may prosecute with earnestness and vigor - indeed he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitamate means to bring about a just one."

— Justice George Sutherland, for the majority in Berger v. United States, 1935

My prayer is that the following is given the consideration it deserved.

With all due respect, see attached.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
See attached also.

5. **Administrative Remedies:**

a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? [x] Yes [ ] No

b. Did you submit a request for administrative relief on Claim I? [x] Yes [ ] No

c. Did you appeal your request for relief on Claim I to the highest level? [x] Yes [x] No

d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. I have filed over 20 something odd remedies in regard to these issues, how in some instances remedies have been made unavailable to me due to various reason being threw away, failure on the part of staff to process and the bounce around sent it to one office they tell me to send it to another sent it to that office, they reject it and tell me[3] to send it back to the first office and so on and so forth I have all the documentary evidence to verify when and if necessary

**CLAIM II**

1. State the constitutional or other federal civil right that was violated: _8th Amendment_

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☑ Other: _Failure-to-Protect_

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   "_Prisoners represent a uniquely vulnerable sector of society._"
   _- (Supreme Court Justice_

   _It is my prayer that the following is "liberally construed and held to a less stringent standard than normal pleadings drafted by an attorney."_

   _With all due respect, see attached_

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   _See attached also_

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☑ Yes   ☐ No
   b. Did you submit a request for administrative relief on Claim II?   ☑ Yes   ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level?   ☐ Yes   ☑ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _I would like to adopt the same reasons stated and put forth in regards to Claim One (page 3) significant administrative hurdles have made some remedies unavailable to One_

4

## CLAIM III

1.  State the constitutional or other federal civil right that was violated: _____
_____.

2.  **Claim III.** Identify the issue involved.  Check **only one.**  State additional issues in separate claims.
    ☐ Basic necessities          ☐ Mail              ☐ Access to the court      ☐ Medical care
    ☐ Disciplinary proceedings   ☐ Property          ☐ Exercise of religion     ☐ Retaliation
    ☐ Excessive force by an officer   ☐ Threat to safety   ☐ Other: _____.

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Claim III.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____.

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

_____
_____
_____.

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your
        institution?                                                            ☐ Yes  ☐ No
    b.  Did you submit a request for administrative relief on Claim III?         ☐ Yes  ☐ No
    c.  Did you appeal your request for relief on Claim III to the highest level? ☐ Yes  ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you
        did not. _____
        _____.

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

## E. REQUEST FOR RELIEF

State the relief you are seeking:

Plaintiff seeks compensatory damages for the loss of privilege and quality of life in his prison living condition and loss of limited liberty enjoyed by prisoners, resulting from his improper and unlawful designated confinement, in that for 11 months but after 18 months he was confined in a Special Management Unit confined for 23 hours a day only allowed to shower every three days and was deprived of most of his personal property, as well as the ability to work. Plaintiff also seeks compensatory damages for the 2 years worth of loss wages from his grade one job which paid $80 to $120 a month depending on business. Plaintiff also seeks compensatory damages for his lost property (17 pounds of legal work, intellectual property and sentimental value of personal effects

Cont.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  2-6-2020
                    DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
_____
_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

2) Kimberly Banks

3) Belinda Anterson

4) Jason Hess

5) Mary Mitchell

6) Ian Connors

7) Gerta Todd

8) Ken Reid

9) Jane Doe (#1) hereafter Cervantes

10) Jane Doe (#2) hereafter Stockton

11) John Doe (#1) hereafter Cipion

12) John Doe (#2) hereafter J. Baltazar

13) John Doe (#3) hereafter Lake

14) John Doe (#4) hereafter Fields

15) John Doe (#5) hereafter Chavez

16) John Doe (#6)

17) John Doe (#7)

18) John Doe (#8)

19) John Doe (#9)

## Defendants

Please be advised, due to Plaintiff's inability to properly identify all the Defendants in addition to naming John Doe Defendants Plaintiff has provided what is known of these defendants and tried to name them to the best of his ability.

"1-A"

Name, Position and Title, and Institution Defendants were employed at the time of all relevant claims:

5) Fifth Defendant: Mary Mitchell, Regional Director, Western Regional Office

6) Sixth Defendant: Ian Connors, Administrator National Inmate Appeals, Central Office

7) Seventh Defendant: Gerta Todd, Psychologist, Challege Coordinator, Atwater

8) eigth Defendant: Ken Reid, Chaplain, Atwater

9) ninth Defendant: Cervantes, Disciplinary Hearing Officer, Atwater

10) tenth Defendant: Stockton, S.I.S. Technician, Atwater

11) eleventh Defendant: Cipion, Food Service Administrator, Atwater

12) twelfth Defendant: J. Baltazar, Regional Director, Western Regional Office

13) thirteenth Defendant: Lake, Acting Regional Director, Western Regional Office

14) Fourteenth Defendant: Fields, Special Investigative Agent (S.I.A), Atwater

15) Fiftheenth Defendant: Chavez Disciplinary Hearing Officer Administrative Assistant, Atwater

16) sixteenth Defendant: John Doe #6, Operations/Activities Lieutenant, Atwater

17) seventeenth Defendant John Doe #7, Special Management Unit Hearing Administrator, Western Regional Office

18) eighteenth Defendant: John Doe #8, Assistant Director, Correctional Programs Division, Central Office

19) nineteenth Defendant: John Doe #9, Designation and Sentence Computation Center, Grand Prairie

"7-A"

Claim One

## 5th Amendment, Right to Procedural Due Process

1. On 2-12-18 Defendant Banks used material false statements to falsify incident report 3088393 alleging sexual assault.

2. On 2-22-18 before the controversy was brought before Defendant Cervantes, the disciplinary hearing officer, here after (DHO) a phone conference was set up between the plaintiff and Defendant Reid, the Plaintiffs then appointed staff representative, here after (staff rep).

3. At said conference Defendant Reid stated that recorded video surveillance showed the Plaintiff reaching in Defendant Banks direction three times, but he, Defendant Reid couldn't determine whether the Plaintiff touched/assaulted Defendant Banks or not. When asked to give his personal opinion based on what he observed from the camera footage, if Defendant Banks had been sexually assaulted, he responded, "I can't do that." When asked for his professional opinion on the same, he stated, "I can't do that either." When asked whether or not he utilized the zoom feature on the camera or if the Plaintiffs reaching in Defendant Banks direction could have been consistent with pointing, Defendant Reid refused to clarify one way or the other.

4. At that time, the Plaintiff requested that Defendant Chavez, the DHO Administrative Assistant terminate the call and repeatedly requested another (staff rep) to which Defendant Chavez emphatically and adamantly stated, "No." What Defendant Chavez did make clear was that either the Plaintiff could waive Defendant Reid and proceed with the hearing that day or keep Defendant Reid and wait an additional 2 or 3 weeks until both Defendant Reid and Cervantes were available, but I would not be appointed another (staff rep.).

5. At that time the Plaintiff waived Defendant Reid for his failure and reluctance to assist him. Then Defendant Chavez commenced to connect the conference call between the Plaintiff and Defendant Cervantes to proceed with the disciplinary proceedings.

6. During the hearing the Plaintiff was prejudiced by how Defendant Cervantes conducted the hearing. Argumentative, combative, unprofessional, the defendant went to great lengths - maliciously misrepresenting facts (alter) in evidence and adamantly refusing to allow the Plaintiff to present video footage - to skew evidence to fit the scope of their opinion and predisposition. The Defendant not only prevented the Plaintiff from presenting the most dispositive item of proof, but significantly affected the Plaintiffs ability to demonstrate his innocence. It was virtually impossible to overcome Defendant Cervantes bias.

7. Defendant Cervantes found the Plaintiff guilty while arbitrarily excluding the most telling and critical component to the Plaintiffs defense. Evidence that would have not only exonerated him, but would have irrefutably disproved Defendant Banks claims while at the same time highlighting her malfeasance.

8. On 2-12-18 Defendant John Doe #6, the Operations/Activities Lieutenant at that time failed to comply with the policy and standard set forth in Program Statement 5270.09 Section 541.5 and 18 C.F.R. 541.7 which requires the investigating Officer to conduct a complete investigation and states, "the investigation officer must make every effort to review and preserve video or and audio surveillance.", respectively, to ensure that a prohibited

"9-A"

5th Amendment, Right to Procedural Due Process (cont.)

~~(struck)~~ act had in fact been committed.

7. Defendant John Doe #6 failed to even interview the Plaintiff and instead of reviewing the most critical evidence in this controversy, wholely adopted and endorsed Defendant Banks statements. The defendants actions allowed the misconduct of the reporting officer to go undisclosed, making him complicit to the misconduct.

10. When it was in her power to do so, Defendant Mitchell failed to remedy said constitutional violation created by the discriminatory manner in which Defendant Cervantes conducted the Plaintiff's disciplinary hearing. Yet instead Defendant Mitchell kicked the Plaintiff's appeal back to Defendant Cervantes for reconsideration. (Never mind the fact that Defendant Cervantes had already wrongfully convicted the Plaintiff and covered up Defendant Banks misconduct with misconduct of her own. Dishonestly altering and suppressing exculpatory evidence of the Plaintiff's innocence. Defendant Mitchell still proceeded to allow the proverbial wolf to guard the chicken coop. Throwing the Plaintiff to the wolves right along with his constitutional guarantees.

11. The reconsideration was held on or about 7-30-18 and did nothing to cure or address the Plaintiff's concerns, beside giving Defendant Cervantes an opportunity to augment the record with more misrepresentation, twisting my request to present the video footage and another staff rep to fit the form of her version of the facts. Completely fabricating the following statement, "I wanted Chap. Reid to side with me and he wouldn't so I waived him because he wouldn't sway with me", and attributing it to the Plaintiff, when the Plaintiff then and now was always to be able to present irrefutable evidence - the video footage.

12. Defendant J. Baltazar reviewed the Plaintiff's disciplinary proceeding on appeal and conceded Defendant Cervantes failure to comply with the regulations on inmate discipline that exist to satisfy the constitutional requirements of Due Process, but instead of overturning it, incredibly Defendant Baltazar opted to sustain it. Stating "You claim the DHO did not review video evidence. Though the record does not indicate the ~~reason~~ DHO reviewed video evidence, it reflects you invoked your right to staff representation for review of video evidence. It also reflects your staff representative reviewed video evidence and addressed his observation during your hearing which was considered and addressed by the DHO. Though you waived your right to a staff representative at the hearing, they did provide the DHO with their observations for the record." and consideration." When nothing in Defendant Cervantes report "reflects" that it relied on such observations to support her findings. In fact the ~~video~~ (record) reflects the direct opposite, theres a glaring omission that video footage of this incident even exists.

13. Defendant Baltazar ~~also~~ response also posits the notion that wavier of a (staff rep) for whatever reason could forfeit the Plaintiffs constitutional right to present evidence or absolve Defendant Cervantes of her obligation as a Fair and Impartial factfinder to as BOP policy states "to consider all evidence presented at the hearing." Especially when this video evidence created a genuine issue of material fact.

14. The Plaintiff addressed all these issues, but particularly this issue in an appeal to Defendant Ian Connors. To quote directly from the appeal made to Defendant Connors in regards to Defendants Baltazar's response." The Regional Director ... "Going as far as to state," it is apparent the DHO found you guilty based on the greater weight of the evidence ." That evidence, coupled by the fact you were unable to present credible or verifiable evidence which exonerates you from the charge ..." Which is alarming, considering the most telling evidence in my favor-concrete and irrefutable video evidence -which would have exonerated me, was arbitrarily excluded by the DHO, depriving me the opportunity to even present it at the hearing."

15. Defendant Connors violated the Plaintiffs constitution rights in sustaining an unlawful conviction.

16. On or about 5-10-18 the Plaintiff appeared before Defendant John Doe #7 for a Special Management Unit

"3-B"

Claim one (cont.)

## 5th Amendment, Right to Procedural Due Process (cont.)

(SMU) Referral Hearing, during the hearing the Plaintiff notified the Defendant that he had not heard from the appointed (staff rep). (Defendant Cipion was appointed to assist the Plaintiff in compiling documentary evidence and written witness statements. The Plaintiff also requested Defendant Cipion to review video footage from which (SMU) designation referral was predicated and which Defendant John Doe #7 was to base his determination and write a summary of what he saw and forward his findings to Defendant John Doe #7 for his consideration.

7. Defendant John Doe #7. allowed for a week, postponing the hearing until 5-17-18 to allow Plaintiff to confer with Defendant Cipion on collecting the requested documentary evidence and written witness statements. Defendant John Doe #7 out rightly rejected the Plaintiff's request that video footage be reviewed and the written statements from inmates. (Stating that he would not accept statements from inmates - even though policy permits them - and that staff are not required to review video or evidence from a prior sustained disciplinary action. The Plaintiff adamantly disagreed particularly since he was never permitted to use this footage at the disciplinary hearing and said (SMU) referral was predicated upon, the (DHO's) finding of guilt in that situation.

8. The hearing commenced on or about 5-17-18 at the hearing the plaintiff notified Defendant John Doe #7 that instead of collecting the documentary evidence and written statements from staff, Defendant Cipion went to great lengths to sabotage the Plaintiff's efforts to present exculpatory/mitigating evidence by interviewing Defendant Banks, Defendant Todd and those sympathetic to her prevarication.

9. Defendant (Cipion) attempts to sabotage my efforts amounted to a failure to assist me and that failure as my appointed (staff rep) denied due process.

20. Defendant John Doe #7 refusal to allow me to change staff reps and to proceed with the hearing prevented the Plaintiff from presenting documentary evidence and written witness statements. The defendant proceeded with the hearing because as he put it, "I can't keep postponing this thing." Indicating that keeping schedule was more important than any constitutional concern I might have. The plaintiff was essentially denied the right to present evidence and have a staff member actually assist him in a meaningful and substantial way.

21. Defendants John Doe #8 (Lake) & John Doe #9, and Connors all sustained the defendants placement in a SMU, without due process all in violation of the 5th Amendment's Right to Procedual Due Process Clause.

## Injury:

22. Defendant Banks failure to honor his unique position of trust and obligation to report truthful and accurate facts violated the Plaintiff's constitutional right to due process when she used material false statements to falsify an incident report.

23. Defendant John Doe #6 violated the Plaintiff's due process by failing to comply with the policy on inmate discipline, had the defendant conducted a complete investigation as required by law, the Plaintiff could have been exonerated immediately.

## 5th Amendment, Right to Procedural Due Process (cont.)

24. Defendant Cervantes abused her discretion in an extremely discretionary manner, by dishonestly altering and suppressing exculpatory evidence the defendant significantly affected the Plaintiff's ability to demonstrate his innocence.

25. Defendant Chavez infringed on the Plaintiff's rights by refusing to allow the Plaintiff to change (staff reps) and instead proffering an ultimatum as if the right to due process is a zero sum game.

26. Defendant John Doe #1's decision not to allow the Plaintiff to change (staff reps) or present documentary evidence and written witness statements deprived the plaintiff of an liberty interest, in violation of due process.

27. In sustaining an unlawful and constitutionally compromised DHO finding and blatantly disregarding the most striking features of my complaint, while it was in their power to remedy those defects, Defendants Mitchell, Baltazar and Connors totally disregarded my due process in violation with the Constitution of the United States.

28. Defendant Reid's failure to honor his obligation to report truthful and accurate facts coupled with his failure to actually assist me denied due process.

29. Defendant Cipioni's failure to carry out basic, reasonable and non-disruptive requests coupled with efforts to sabotage my attempts to present mitigating/exculpatory evidence at a critical point in a proceeding that ultimately decided whether the plaintiff would be designated to a Special Management Unit denied due process.

30. The plaintiff was denied due process at every stage and as a result whether considered individually or in aggregate the Plaintiff has and continues to be adversely affected. Not only has the Plaintiff been falsely accused and wrongfully convicted, but as a result the Plaintiff has been improperly and unlawfully confined in segregation or restrictive detention for over 533 days. The Plaintiff's relative base line status has dropped significantly, outside of being improperly segregation, sent to a Special Management Unit, the Plaintiff lost a grade one position as a safety orderly which payed $170 to $120.⁰⁰ a month, lost a re-entry teaching position which the Plaintiff found meaning in. His whole program has been disrupted while in the SMU he lost the privilege to visitation, classes, recreation and quality of life by his prison living condition. 67 pounds of the Plaintiff's legal work and intellectual property has been lost, and his classification has been improperly adjusted. The defendant would have suffered none of which if he had been given a proper hearing and hadn't suffered such extreme constitutional violations.

31. Defendants Lake, John Doe #8, John Doe #9 and Connors violated the state Plaintiff's rights by upholding constitutionally deficient SMU designation.

Claim Two

8th Amendment, Failure-to-Protect

On or about 6-1-16, as a result of a disciplinary proceeding, the Plaintiff in this instant controversy was found guilty of Making a Sexual Proposal, stemming from an incident in which the Plaintiff gave a female psy-chologist a letter alleged to contain a sexual proposal, (here after (the 16 incident).

. Consequently the Plaintiff did 63 days in disciplinary segregation and was transferred from Victorville to Atwater. Upon arriving, the Plaintiff signed up to participate in the Challenge Program (an intense 500 hour in patient behavior modification program provided by the B.O.P.)

. Plaintiff was placed in the program on or around sometime in September 16.

. Sometime in November of that year Defendant Todd assumed Coordinator responsibilities for the Pro-gram. Defendant Todd is also a Psychologist from Victorville.

. In April the following year, the Plaintiff was placed in Administrative Detention, pending an Special Inves-tigative Services, hereafter (S.I.S) Investigation, which according to the S.I.S Investigative Officer Lt. Hayes was based on a 5 page memo Defendant Todd wrote on the Plaintiff concluding her professional and personal assessment that the Plaintiff was sexually aggressive.

. Yet the very first question S.I.S Hayes asked the Plaintiff, is, "why are you here? Naturally the Plaintiff believed him to referring to prison. Yet Hayes clarified immediately, "No, why are you in this prison? why did you get transferred (here referring to the 16 incident." Clarifying that maybe that memo was more a product of Defendant Todd's (personal) knowledge of that "incident," than it was any personal or professional assessm-ent.

. Of course the natural response to learning you're about to be arrested, is why? "What did she say I did?" To which S.I.S Hayes repeated," she say you have a history of it, she say you have a history of it." "A history of what?", but that's all he would proffer.

8. That reticence became a theme during the course of the investigation, outside of the initial interview that was the prevailing posture taken toward the Plaintiff. So much so that the plaintiff reached out directly to Defendant Matevousian pleading with him to personally look into his situation, as the Plaintiff was essentially in the Special Housing Unit for nothing. That memo was based on the "16 incident," and the Plaintiff should be given the opportunity to put that behind him and move past it, especially since the Plaintiff had already served his time for it. Defendant Matevousian agreed.

9. Defendant Matevousian reassured the Plaintiff that if by the end of the investigation it had been deter-mined he hadn't done anything, he would be released from the SHU.

10. It would take another 49 days to be released from the SHU, but not without incident, about a week be-fore the Plaintiff was to be released from the (SHU) the Plaintiff got into a verbal altercation with SHU personnel ab-out his food. The Correctional Officer hereafter (C.O.) had inadvertently skipped the plaintiffs cell during feeding.

"11-A"

Claim Two

8th Amendment, Failure-to-Protect (cont.)

Upon notifying staff that he missed the Plaintiffs cell and didnt give him his food a heated confrontation ensued. The C.O. exploded. Yelling at the top of his lungs in front of all the other prisoners on the range, that the Plaintiff was a sex offender and deserved his balls cut off." Repeatedly stating "Did you tell you're (homies) that you're back here for stalking? Did you tell em that? Did you tell em that(?) I'm surprised that they let creeps like you walk the yard."

11. As his tangent increased in intensity, he adamantly refused to feed the Plaintiff and his celly. In order to eat the Plaintiff's celly had to broker a deal with another. The Plaintiff agreed to drop it in order to eat, but the damage had already been done.

12. Immediately upon being released from the (SHU) the Plaintiff brought it to Next Defendant Matevousian and expressed his concerns about the repercussions of being perceived as "sexually aggressive" toward staff and being labeled a sexual predator or a sexual offender in a prison setting particularly at United States Penitentiary. Defendant Matevousian told the Plaintiff that, "perception isn't reality" and as long as the Plaintiff kept his nose clean, the Plaintiff shouldn't have any problems."

13. On 2-12-18 Defendant Banks profiled the Plaintiff (see incident report) and used material false statements to falsify an incident report based whole or in part on memos circulating amongst staff alerting them to the Plaintiffs allegedly proclivity for to be sexually aggressiveness.

14. In compliance with the Prison Rape Elimination Act hereafter (PREA) that requires facilities adopt a zero-tolerance to rape and sexual abuse and the protocols set forth in the B.O.P.'s Sexual Abusive Prevention and Intervention Policy hereafter (sexual abuse policy) Defendant Matevousian was notified and had either an active or constructive notice of the most incriminating and blatant evidence of Defendant Banks misconduct.

15. Yet instead of taking action to either help, investigate, or correct Defendant Matevousian knowingly and intentionally took actions that either directly affected the Plaintiff's ability to seek recourse at the institutional level - totally ignoring multiple Remedy Required and letters making him aware of Defendants Banks misconduct - or that were intended to inflict severe and unwarranted punishment.

16. On 2-14-18 at Defendant Matevousian's direction Plaintiff was placed on "Limited Services," encumbering his account, erasing all personal contacts - phone numbers and e-mail correspondents - from the Plaintiffs contacts and totally denying the Plaintiff access to the law library and courts and completely blocking the Plaintiffs ability to use the phone essentially too and effectively rendering the Plaintiff incommunicado. All this was done without notice and independant of a DHO finding or SIS Investigation.                                                                    20 months

17. The Plaintiff went without the ability to access or use the e-mail, transfer funds, purchase tru-links for just about its it wasn't until on or about 10-5-19 that those restrictions were finally lifted off the Plaintiffs account.

18. The Plaintiff was also prejudiced by the deliberate indifference of Defendants Fields and Stockton who also failed to act in violation of the B.O.P's sexual abuse policy which specifically requires when an inmate is accused of sexually abusive behavior toward staff that S.I.A and S.I.S personnel collect, review and preserve all evidence. The defendants deliberate indifference allowed the misconduct of Defendant Banks to go undisclosed making them complicit to the misconducts

19. Immediately following the DHO's unlawful conviction the Plaintiff forwarded a request to S.I.S. personnel requesting                                                   personnel

"4-B"

Claim Two

# 8ᵀᴴ Amendment, Failure-to-Protect (cont.)

the preservation of any and all video footage for any and all subsequent appeals. The following week on or on the S.I.S. next SHU round the plaintiff inquired about said request, its status and priority. Initially the inquiry was directed at another member the S.I.S personnel who deferred to Defendant Fields. To which the Defendant "we don't work for you", we work for Central Office direct all your request there. When asked if he had seen the footage he walked off. Making it abundantly clear the Plaintiff would never receive from that quarter.

19. On 3-13-18 The plaintiff was interviewed by Defendant Stockton. The defendant began the interview by stating, "I'm not letting you back on this yard." When the Plaintiff went on to profess his innocence. The defendant asked about the "stalking memo" and the "16 incident". When the plaintiff responded incredulously to the stalking comment. The Defendant asked, "You know how this is looking right?" Alluding to the fact that the plaintiff was being perceived as a sexual predator. When asked if she'd seen the tape, the Defendant, immediately responded with a question, "Do you think you were standing close?" (close-ly) referring to Defendant Banks, but also indicating that she had in fact seen the tape. When the Plaintiff inquired why she going to cycle into Defendant Banks misconduct, the Defendant responded by reassuring the Plaintiff, "he shot's going to (it) go down, "the shot's going to stick," referring to the Sexual Assault Incident Report.

20. At some point ITS Supervisor Mr. Beardsly made a SHU round acting in the capacity of that weeks Institutional Duty Officer, as the Plaintiff stop him to inquire about the restrictions that had been placed on his personal account and resp- onded, "Oh you're the Fire Extinguisher Guy. Oh I can guarantee you aint got nothing coming." The Plaintiff responded by asking him if he'd seen the video?" He stated, he hadn't but said "you're shit", as he walked away. Making it very clear that I didn't have nothing coming.

21. The Plaintiff had the opportunity to catch Defendant Reid on a SHU round at which time (he) expressed his disappoint- ment in the Defendants actions, his overall failure and reluctance to tell the truth. The Plaintiff explained that as a conseq- uence of that hearing and the unlawful conviction the plaintiff was being labeled as a sex-offender which could make for an extremely hard bid in this prison system. The Defendant expressed remorse and straight up asked, "what did you do to Ms. Banks?" "I don't know but I know I didn't sexually assault her. the Plaintiff responded

22. Defendant Reid stated that he would contact the DHO and see what he could do. The Defendant returned on his next SHU round and stated that according to the DHO at that point all I could do was appeal. So the Plaintiff asked if he would be willing to write a statement on the Plaintiffs behalf as to the Defendants observation and actual involvement. Initially the Defendant expressed a willingness upon leaving only to return weeks later stating, "I'm sorry I cant, they told me I cant help an inmate with an appeal like that I cant write a statement like that". The Defendant Plaintiff continued to press the Defendant on his obligation to speak truth to power as a man of God and finally stated, "I cant get involved, its over my head. They want you, and there's nothing I can do."

23. Defendants Hess and Anderson were both made (aware) of the existence of exculpatory video footage exonerating the Plaintiff and incriminating Defendant Banks through letters written and personally handed to them respectively by the Plaintiff. The letters disclosed the full extent of Defendants misconduct and the Plaintiffs innocence. However instead of taking actions to help, investigate, or correct both took extraordinary actions to do the exact opposite endorsing an lawful referral for SHU designation.

24. Further appeals were made to Defendant (Hess) to lift the unduely restriction of being on "Limited Services" so that the Plaintiff could use the phone and law library. To which Defendant Hess stated, "what you did to piss the old man off?" Referring to Defen- dant Matevousian. Defendant Hess told the Plaintiff that "his hands were tied" until the old man left." It was not until Defendant

"4-C"

Claim Two

8th Amendment, Failure-to-Protect (cont.)

Matevousian transferred to another institution that the Plaintiff was given access to the phone and law library, but due to the encumberance the Plaintiff was unable to transfer funds to his phone account and therefore was unable to use the phone until being transfered to the (SMU).

25. Relying on the unlawful DHO finding a sexual offender public safety factor was erroneously lodged against the Plaintiff certifying the fact that the Plaintiff would have to live the rest of his life having to negotiate an openly hostile and ultra violent environment where the Plaintiff has to deal with the virulent hostility and stigma and the potential dangerous consequences of being perceived as a sexual predator by staff and inmates alike.

26. Being labeled as a sexual predator puts the Plaintiffs life in danger in every way every day.

Injury:

27. Being present in Victorville when Plaintiff gave letter to one of her colleagues Defendant Todd maliciously used her personal knowledge of that incident as the basis to create a narrative of the Plaintiff being sexually aggressive. And that was just the official document (5 page memo) its impossible to calculate all the intangible ways that this narrative was circulated, advanced and propagated ~~(but however we are not effected nor by being labeled as sex)~~ but by labeling the Plaintiff as a sex offender not only affected the way staff and inmates perceived the Plaintiff but ultimately how they interacted with the Plaintiff. By labeling the Plaintiff as a sex offender the Defendant put the Plaintiff at seriousrisk.

28. Being made aware of the Plaintiffs "situation" Defendant Matevousian failed to take reasonable actions to protect the Plaintiff. Instead the defendant blatantly ignored the Plaintiffs pleas for help — by totally disregarding letters and multiple Remedy requests. Defendant Matevousian failed to take disciplinary or other actions to either curb or remedy Defendant Banks misconduct. or to remedy the Plaintiffs improper segregation.

29. Defendant Matevousian went a step in a different direction, after deciding for whatever reason that the Plaintiff was-not worthy of his protection, the Defendant conveyed this sentiment to his ~~subordinates~~ subordinate directly or indirectly. To ~~gaus~~ "guarantee," as Mr. Beardsly put it, that "the "fire extinguisher "guy" didnt have nothing coming. no matter how essential or deserving the message was basically anyone could abuse the Plaintiff ~~with~~ ~~and~~ ~~with impunity or~~ ~~property~~ or neglect to do their job or responsibilities could do so with impunity. As reflected in Defendant Reids statements "its over for me ahead, They want you, I cant help." and Defendant Hess' comments "my hands are tied." Defendant Matevousian was aware that a substantial risk existed but instead of responding reasonably he created a culture of suppression, where my allegations regardless to the evidence that supported their validity were swept under the rug — and of cover up. because there's no way in light of irrefutable camera footage Defendant's ~~Banks~~ misconduct should have been allowed to persist. All in violation of the 8th Amendment.

30. Defendants Fields and Stockton deliberate indifference amounted to a failure to protect in violation of the 8th Amendment

31. Defendants Hess and Auterson failure to remedy improper segregation after being repeatedly made ~~aware~~ the Plaintiffs innocence and Defendant Banks misconduct, and the failure to protect the Plaintiff from the unlawful deprivation of rights demonstrated a deliberate indifference in violation of the 8th Amendment. aware

32. Defendant Baltazar failure to protect the Plaintiff after being made ~~of~~ the culture of misconduct through sensitive Remedy requests violated the 8th Amendment. Also his upholding of the sexual offender Public Safety Factor and the same

33. Prison is already a very violent place but theres a particular danger that comes with the "negative credential" of

"H.D."

Claim Two

8th Amendment Failure-to-Protect cont.

being "branded" as a particular class of prisoner. Theres a particular code, a culture that persists and every defendant named in this action knows the danger involved. Like snitch, being labeled as a sex offender automatically makes the plaintiff vulnerable and susceptible to violence and abuse. It automatically puts an asterisk by the plaintiffs name and a target on the plaintiffs back. Being labeled as a sex offender puts my life in danger every day. and to think, to know that it is a product of misconduct. The BOP states that "it holds staff to the highest standards," however I continue to be adversely affected because thats not necessarily the case. Theres a culture of tolerance and cover up that persists in it. In this case no one placed an obligation on truth rather the obligation has always been placed on the fealty to their fellow co workers and as a result, no matter how egregious staff have been allowed to violate my constitutional rights with almost perfect impunity.

"4-E"

Request for Relief

lost, pictures of deceased loved ones

Plaintiff does not seek compensatory damages for mental or emotional distress.

Plaintiff seeks punitive damages against all named defendants for deprivations of constitutional rights and for their willful and malicious conduct in confining plaintiff to restrictive detention and segregation after a hearing in which he was denied basic rights to due process of law.

(Defendants)

Plaintiff seeks additional punitive damages against Matevousian, Cervantes, Banks, and Todd for their actions in labeling the Plaintiff as a sex offender, fabricated the charge, falsified an incident, for their misconduct and their misconduct in perpetuating it. The Plaintiff asks that it reflects the need to deter others from abusing their positions of trust and exploiting the vulnerabilities of Prisoners.

The Plaintiff also asks that the unlawful conviction be expunged for his record and any and all classification adjustments - namely the four points classification points be rescinded

Lastly the Plaintiff asks that this court grant any other just and equitable relief that this Honorable Court deems necessary.

"6-A"

I, Jarvis Brown, do hereby certify under penalty of perjury 28 U.S.C. § 1746, that I have served a true and correct copy of the foregoing document(s):

Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971)
Pursuant to 28 U.S.C. § 1313

Which pursuant to Houston v Lack 487 U.S. 266, 101 L.Ed 2d 108 S.Ct 2379 (1988) is deemed filed at the time it was delivered to prison authorities for forwarding to the court and service upon parties to litigation and/or their attorney(s) of record.

I have placed the material referenced above in a properly sealed envelope with first class postage (stamps) affixed and I addressed it to:

Office of the Clerk
U.S. Courthouse Building
2500 Tulare Street, Room 1501
Fresno California, 93721

And deposited said envelope via hand delivered to the mail room staff at U.S.P. Pollock, LA, 71467 on this February 6th day of 2020

Jarvis Brown
Reg # 08200-028
United States Penitentiary Pollock
P.O. Box 2099
Pollock, LA 71467